Judge Lagoa, Judge Hull, and I are happy to welcome you to the second day of our panel sitting here in Jacksonville. We have four cases today. You're familiar, I hope, with our traffic system with the lights. When the yellow light goes on, that means that your time is starting to draw to a close, so you can start to wrap up. If we take you beyond the red light, don't worry about it. Just keep going as long as we're asking you questions. And with that, we're ready to start with our first case, number 23-10272, United States v. Gretchen Buselli. Mr. DeBelder. Good morning, Your Honors. Joseph DeBelder on behalf of the appellant, Gretchen Buselli. Whether the killing of a human being is lawful under Florida law is definitional. Because of that, the district court's instructions on murder in violation of Florida law were inadequate and require reversal in this case. Imagine, if a mother receives reliable information that her abusive son-in-law is going to her daughter's house to kill her daughter. The daughter lives in a different part of Florida in the country. The mother picks up her cell phone, calls the daughter's neighbor, and tells the neighbor that she will give the neighbor $5,000, all the money in her bank account, to go to her daughter's house and kill her son-in-law to protect her daughter. That mother has used a facility of interstate commerce with the intent that a premeditated killing of a human being with malice of forethought be committed as consideration for the $5,000. But aren't you putting the cart before the horse in the sense that the threshold question, it seems to me, and I speak only for myself and not for my colleagues, isn't the threshold question whether under 1958, you have to instruct a jury on every nuance of unlawful killing under state law? And don't the cases generally say that you don't have to go to that level of detail? The cases generally say that the issue- I mean, I'm not taking issue with your description of Florida law. My question is, at the first level, under federal law, what does 1958 require a judge to instruct a jury on? Every single nuance, every single set of elements for every type of killing? So you've got to define first-degree murder, second-degree murder, you know, reckless homicide, manslaughter, all degrees of manslaughter, voluntary and involuntary. You've got to give the whole state criminal code on unlawful killings in a 1958 prosecution? I don't- I'm not asserting that, Your Honor. What I'm asserting is that you have to give the instructions that would define what lawful and unlawful means based on the evidence. And what I'm saying is- so we have the instructions that we're talking about, the justifiable and excusable homicide, those are given in every case in Florida. And then specifically, what I'd like to focus on, the justifiable use of deadly force. Because the question then, if we assume- But instructions are given when there's evidence to support the theory of defense, right? And her claim was not that she contracted with anybody to do this for the protection of her client. Her claim was that she never intended that any harm come to him. That was her testimony, absolutely. Right. But just because a defendant testifies about their intent and the jury disbelieves doesn't mean the jury necessarily has to- has refuted the justifiable use of deadly force. And that's what makes it different than a scenario. If she had testified, that wasn't me on the phone calls, then I would agree with the government that her testimony refuted any ability for- to make the argument that it was justifiable use of deadly force. But a jury certainly, based on the evidence that was presented towards it, should have been instructed that justifiable- what justifiable use of deadly force is because there was some evidence to support the instruction. And I'll refer you to- Given her testimony, if that- assuming that's right, given her testimony, how do you show harmful error? Well, Judge, I'm glad you asked that question because here's how you know there was harmful error. Because the government, of the seven witnesses they put on- in the trial, four of them were there to rebut justifiable use of deadly force. Now, they didn't put the- they didn't get- the instruction wasn't given, but four of the seven witnesses dealt with the- trying to refute the allegations of abuse related to the daughter. And that's what the government was putting on for. Now, they might argue that, well, we were just- we were trying to prevent a jury pardon. Well, no, but that's because they didn't know what your client was going to say when she took the stand. I mean, the government goes before you, and there's no discovery in the federal criminal system that requires you to tell the government what your client is going to say if she takes a stand. So, they- the government did not know whether or not your client was going to take the stand or not, and if she took the stand, whether or not she was going to deny being involved, deny that it was her on the phone, or say that she didn't intend anything to happen, or did it because she thought it was justifiable to protect her daughter. I- I agree that they- they put it on before, but of course, they could put it on in rebuttal, first of all. But second- so, they were the ones that chose to bring that out. But secondly, the reason they brought that out was because of the statements that were on the calls that they introduced, and they wanted to rebut that evidence that was in front of the jury already. But then your client disclaimed all of that. The client- the client did not- and that's- Ms. Pacelli did not disclaim that she was the one making these statements. No. Nor that the abuse was occurring. That she agreed with someone to pay money for the killing of her former husband or husband in order to protect her daughter. She denied that. She absolutely denied having the intent in this case. But there was evidence to- that she- the jury thought she did have the intent, but the jury wasn't instructed on- well, what the jury's instructed on, which is- I thought- I thought she had denied it when she was brought into the police station and questioned, and that's where she was charged with- with perjury. Is that not correct? I'm sorry, Your Honor? When she was brought to the police station, my understanding is that she denied any involvement or she had no idea what this was about, and isn't that the reason that she was charged with perjury? Initially, that's correct. She made statements to the extent that she would never do anything to hurt Mr. Buscelli. But she, in her testimony and on the calls, did not deny that the abuse was occurring. In fact, reiterated that she strongly believed that the abuse did occur. And not only that, there were- there were stipulated facts that other witnesses had reported this to the police and other law enforcement and other Florida agencies, and that the daughter, the child, had made a statement to a counselor alleging abuse by the father. And these were the stipulated facts. And then on top of that, like I said, the government then spent- and we're not talking about four short witnesses, we're talking about a sizable portion of the trial refuting or attempting to refute the allegations of abuse to show that they had done- that they were not ignoring this abuse. And the reason for that was because they were- they were, in effect, defending against a defense of others charge that was never given to the jury. And what I- what our position is, is that the jury should have been given the law on defense- on justifiable use of deadly force, and then they should have made the decision. And so that's- that's where- that's the contention. I have a question about justifiable use of force. Can you cite me any Florida case, forget about a federal statute, but any Florida case where they've recognized that and charged with the jury, where it's not the person who's being subject to the abuse, as opposed like a wife who's being abused, and so it's justifiable abuse to- a justifiable homicide to kill the abuser. Any case where somebody's been able to defend against- forget about the federal statute, intent to murder, where they've been charged with murder and they say, well, I was trying to keep something from happening to a third person. Is there any Florida case you can cite us where it was justifiable use of force to prevent- to prevent injury to a third party? I couldn't- any Florida case where that's been charged in that fact pattern, in your brief. Judge, I believe there- there is a- a- a citation related to the defense of others, which is that you can defend against a forcible felony being committed against another individual. That has an immediacy requirement with the person being present right there. I'm talking about any case where the person's not present, it's- it's a third party, and there's no immediacy requirement of presence at the same place. Any case like that where the third party's somewhere else, next door, but just not right there. I- I understand the court's question. I can't, off the- off the- off where I'm standing today, give the court a citation. I couldn't find any Florida case where- where they've said you've got to charge. But the issue of immediacy, again, is also in Florida a jury issue, because it's different than immediate, or as- as the way that Florida defines it. Yeah, I understand about that. I was talking about the third party at some other place where somebody's been allowed to argue as a defense justifiable use of deadly force. I understand the court's question. I don't have a citation for the court in- in regards to that. Okay. Could you briefly talk about your second issue, which is how you say the government improperly used Section 1001A to prosecute a- what is essentially a- a denial of guilt in a pre-trial interview? Well, the contention in the- in the issue, too, Judge, is that the- because Ms. Buscelli was, in effect, under arrest, she was- she was going to- the prosecution was beginning, she- they- they- the statements were- were elicited specifically to charge her with the crime, which we feel violates the Sixth Amendment. That's it. Would that- do you think that- that argument would apply to any questioning? Even- even questioning that occurs after Miranda warnings are given? I- I understand the court's question. I- I- I- I understand the court's question. The question- I guess the questioning would be the specific nature of the question. And that's the- that was the contention, is that because of the nature of the question, just to get the denial to then be charged, that's- that's where the argument is. Okay. All right. Thank you very much. Thank you.  Thank you. Ms. Weiss. Ms. Weiss. Good morning. May it please the court, Caitlin Weiss for the United States. Your Honors, for any of the five reasons laid out in the government's brief, this court can affirm the defendant's conviction on count one. Binding circuit precedent does not require the district court to define murder in this particular law. The proposed instruction that the defense suggested being used did not accurately state the intent element. And the court ultimately, in this case, provided an instruction on the requisite intent that was proper, that did not confuse the jury, and which relied on the facts which were actually before the court in this case. And as such, it's the government's position that count one must be affirmed. When you look at this court's precedent and the way that it has interpreted cases, our first argument goes to the Travel Act and to that precedent. The binding precedent of this circuit, Conway and Prince, specifically says that these terms under state law are definitional, that the generic definition of the crime is absolutely sufficient, and that Congress's intent in passing the Travel Act, which the murder for hire statute comes from, was just to provide that generic definition and not specifically to adopt all of the nuances of state law, which is... But the indictment charges, and I'm not taking issue with your citation to those cases as our precedent, but the indictment does charge in violation of state law. It does, Your Honor. Isn't that a little odd? Well, if you look at the cases which are... You didn't charge murder generically. You charged murder as defined in state law. That's correct. And that is what the precedent, specifically Conway, says is perfectly appropriate. Conway cited to the Maryland arson statute. And in that case, the Fifth Circuit held that proving the state statute to which you make a reference is not an essential element in a federal prosecution, that you can refer to that state statute, that you can use that reference as a generic definition upon which to base the case, which is why, in this case, the government's indictment charging under Florida law was completely appropriate. What happens when state law doesn't match the generic definition of murder? So I think that in that case, these statutes, the Travel Act and murder for hire, what they And I think if you look to Nordella, which is the U.S. Supreme Court that Conway and Prince come from, that was the exact situation that confronted the court there, where extortion was defined differently under the law of the state. And what the court concluded is that the purpose of the Travel Act and the purpose of the statutes that have come from it is to criminalize the behavior. And so long as the state makes the behavior, in this case, murder illegal, then you can generically refer to that behavior in the way that we did here and have it be appropriate. That doesn't make much sense. I think if you look to the I mean, if you're saying murder generically and the state law definition has no semblance of closeness to the generic definition, isn't there a disconnect at some point? There, I agree with you, Your Honor. I think that if a state defined murder as something completely If you have a strict liability, unlawful killing statute in a state, what happens? And that's where I think, you know, there could hypothetically be a It shall be unlawful to kill another human being, period. End of story. No defenses, no intent, no mens rea, no premeditation, no malice of forethought, no recklessness, no nothing. It shall be unlawful to kill and no self-defense. It shall be unlawful to kill another human being. Well, I think that that's not a problem. And the state calls it murder. I think that if you, again, go back to the cases that are at the root of this, what Congress was trying to do was address a class of behavior by generically referring to acts that are criminal. Murder, extortion, arson, that's kind of at the root of this. And so it is to address those generic behaviors. I think there's a problem if a state says, you know, murder is picking up litter off the street. That's where you, when you stray from kind of the generic definition of these terms, these very commonly understood terms, I think is where you can have a problem. Right, but this is my last question and I'll let you go. But 1958 says, be committed in part, be committed in violation of the laws of any state or the United States. And so that's where I think, Your Honor, if the state of Florida defined murder as picking up litter, it couldn't be charged in this way. But because the state of Florida defines murder the way it does, you know, as killing a person, it's perfectly appropriate under this court's precedent to generically charge it. What happened in this case, and I bring it up. But he's not complaining about the charge. He's complaining about whatever the merits of the claim. He's complaining about the jury instruction. He's not saying the indictment was insufficient. Well, and what we have to prove in the jury instruction is the intent to commit that offense, which is unlawful in the state of Florida. And so in this case, the state of Florida defines murder. Obviously, we could... But in any event, the state of Florida's definition of murder matches the generic definition and nobody contends otherwise. No, and because... Okay, can you help me with, I think one of the easiest ways to resolve this, again, we can speak for ourselves, is there's no evidence as I see it to support, like if you were trying a murder case, that charge here anyway, even if you were just trying it. And the government doesn't argue that. So tell me why you think there's no evidence to support the charge in any event. Well, and by charge, I assume, Your Honor, means the justifiable use. Only the justifiable use because excusable homicide is accidental, and this clearly wasn't accidental. None of the others are even remotely possible. So the only remote possible charge of defense would have been justifiable. So say why. I mean, you're arguing it brief, but I want to make sure I understand it. Why there's no evidence anyway, as Judge Jordan said. You don't charge these things unless there's some evidence to support it. Completely correct, Your Honor. And I think justifiable use of deadly force is completely inapplicable in this case, first of all, because there's absolutely no immediacy. The government's evidence showed that this crime, the murder for hire, was planned over a period of months. The government's evidence is that the defendant deliberately planned this to occur on a week where she had custody of her child. One of the phone calls with the second hit man, they compare their calendars for scheduling this event. This was not based on an immediate threat of any kind. This was plotted out in the future based on what accommodated the hit man and the defendant's schedule. You also have the problem in this case that not only is there no immediacy, but the defendant did not acknowledge committing the act. In the state of Florida, to get the justifiable use of deadly force or colloquially the stand-your-ground offense, you have to admit doing it. You have to admit that you did the act, that you used the force, but that it was in defense of another. And in this case, the defendant has never acknowledged what she was doing. She simply said she did not intend. As Judge McGor said, she just all the time said she didn't really mean to hire him. Exactly. Despite delivering the money and everything. So that's another reason why the charge doesn't even apply. It does not. You cannot get under Florida law that instruction without acknowledging your role in the offense. And because the defense in this case was that I did not intend for this to happen, it's completely inapplicable, not just for the immediacy, but for that purpose. And I understand you can have justifiable use of force if it's for others and it's right there and they're trying to kill somebody and everybody's right there. I couldn't find any Florida case where it's somewhere remote over there. It's not even on presence where this was allowed to be a charge or even anybody claimed it was a charge. No, Your Honor, and I think that's something that the district court in this case really picked up on. And I think if you look at kind of the discussions of this and then at the court's order, Document 111, and the court in really weighing this issue, I do think the court really considered this. But what the court said is you have to show exactly the question that you just asked, Your Honor. You have to show me a case where I can legally apply this. And then you have to show me the facts that support it. So it's actually a two-prong question that the district court asked in determining not to apply the justifiable use of deadly force because, again, to the government's best knowledge, there is no case where you can use this as justifiable use. Well, that's just another reason why it doesn't apply here. Correct. No evidence to support the charge. No evidence to support the justifiable use of deadly force in this case at all, which, frankly, is logical when you consider what actually happened here. Again, the length of time and the fact that there was no admission to the conduct actually giving that instruction, I think what the district court arrived at would be not just improper but confusing to the jury. And I think that was a really appropriate consideration that the district court weighed here because as we step back and look at this, what we're ultimately discussing is if the district court abused its discretion in not giving these instructions. And the district court weighed very carefully those federal considerations of, you know, what would confuse the jury? What does the jury need to reach the verdict based on what are the facts in front of the court and what's the law? And the judge properly weighed those federal factors in crafting the federal jury instruction. When there's no legal basis for the defense and there's no facts, as the court pointed out, all you're going to do is confuse the jury when you put something like this in front of them. The defense in this case was intent. It wasn't that I was trying to defend my daughter. It was intent. Can you turn to the claim about the 1001 charge? Certainly, Your Honor. It's unusual that the government charges a defendant with a 1001A violation based on a simple denial of guilt. For example, I would have never wanted any harm to come to him. Usually, and I'm not saying this is legally wrong, but it strikes me as unusual or odd, normally a defendant gets charged with a 1001 violation when he or she makes a false statement about an underlying historical fact. I was not there on that day. That is not my signature. I did not travel to this city to do this. But if it's a question, did you kill X? No. And then every time you have a denial during an interview, you're going to get a 1001 violation tacked on because the government thinks it has enough evidence to convict you on the merits of the charge. It's unusual, is it not? Your Honor, I think in this case, I don't think what happened was unusual. The defendant wasn't charged with 1001 for denials of guilt. Wasn't it one of them that she would have never wanted any harm to come to her husband? She was asked if she knew anybody who would do anything to her ex-husband or her husband at the time, and she said, no, I would never ask somebody to do something like this. And then the second one was she was asked how she would feel, how it would affect her if something were to happen to the victim in this case, and she said, I don't want something to happen to him. So I think that those... That's just an I didn't do it thing. But I think it's the core, what she's denying is the core facts of this case. So that means that every time you interview, theoretically,  every time you interview a defendant, a person who becomes a defendant, and you ask the person about guilt, and the person denies guilt, and then you charge the person with the underlying offense, you can also bring a 1001A charge. You denied guilt, you made a false statement. If we convict you on the underlying charge, we're also going to convict you on the 1001A charge. So, Judge, I want to draw a finer line here. I think that when you remember that this is a murder for hire case and kind of the key question was, did she hire somebody to do this? When you're asked if you know anybody who would do something like this, that strikes to the heart of the case. That's not the statement that I'm concerned with. It's the, I don't want something to happen to him? Yeah. I think that that also, though, again, goes to the heart of the case. Sure, which means that if you lie about your guilt in an I didn't do it scenario, you're potentially going to get hit with a 1001 charge. I think it's not if you lie about your guilt, Your Honor. It's if you lie about the facts. And in this case, she said she didn't want something to happen to him, which was directly contradicted by the facts. How is that any different than asking her, did you hire anybody to kill your husband? Because I think the evidence that the government had at that point was this kind of really mountain of evidence about how this would affect her and the fact that she was doing this to try to facilitate the divorce and the move in custody. And by asking her how it would affect her and her denying that, that is a very factually specific question. And I'll also remind the Court that we're under a plain error standard here. And there's really no— No, we are on the jury instructions. Are we under a plain error on the constitutional issue too? I believe so because this issue— No, we are on the jury instructions on the false statement. But same on the constitutionality. It's the government's position that because this was not raised below, it's a plain error and there is no precedent directly on point. So under the second prong, this issue should be— Okay, I think you're right. I just looked at my notes. So we're on plain error on that too. Yes, Your Honor. Thank you. All right, thank you very much, Ms. Weiss. Your Honors, just briefly on the Nardello issue that was discussed with the government, even in Nardello, the Supreme Court says, when they're analyzing the Travel Act, the inquiry is not the manner in which the states classify the criminal prohibitions, but whether the particular state prohibits the extortion and activity charge. And again, so the Supreme Court recognizes that there has to be an underlying law that is being violated. And that's the argument is that with justifiable use of deadly force, that would not be murder under Florida law. But I wanted to turn to the issue of the error in the discussion because I do think there is a little bit of a distinction here in that the jury was being asked and the charge that was brought was what was Ms. Buscelli's intent at the time that she made the phone calls and the mailings. It wasn't a matter of whether this was, was it a matter of what her intent was and whether she intended to commit murder under Florida law at that time. And that's why I think you look at the evidence that was presented, there was some evidence of the abuse. Again, the government responded to that evidence with four witnesses trying to refute those allegations because that goes towards Ms. Buscelli's intent, which is what the jury was ultimately deciding. And that's why I think it's particularly appropriate in this case that the justifiable use of deadly force should have been instructed by the court. And with that, so that's where I think not only is it an error, but again, whether it's harmless or not, goes towards what the government's presentation shows you, that there is a doubt, a reasonable doubt, as to what a jury might have done with that evidence. And that's really what the court's determination, because it wasn't objected to instruction. All right. Thank you very much, Mr. Bell or Ms. Weiss. Thank you very much as well.